7-4-0 v. Mud Buddy Thank you, Your Honor. May it please the Court. Matthew Wolfe for Gator Tail. Are these both used particularly for dynamization? I can't say they have never been used for such a purpose, but I do some medical device work and we would call that off-label in our department. As outlined in the brief, the jump from everything but the propeller shaft of SITO. So how did we get from such a radical reconfiguration of the primary prior art reference to a finding of obviousness? Well, we got there through four manifest legal errors. The first two are interrelated and I'll touch on briefly. In addressing the clear and convincing burden and the deference due to the PTO, the court said, quote, it was being the PTO, was troubled by the patents from the very beginning. In a similar vein, the district court described the PTO as having, quote, capitulated, end quote, and relented without explanation, end quote, when granting the claims originally and then upon re-examination. This is not the language of a district court granting deference to the PTO or abiding by a convincing standard for invalidity. Relatedly, the district court found the clear and convincing standard an easier threshold to cross based on perceived omissions by the PTO. For example, because KSR was not as excited expressly in certain papers, quote, the district court found, there is little in the 340 re-examination to convince the court that the PTO applied the proper legal standards, end quote, and that the court, quote, lacked any assurance that the PTO followed KSR. More directly, as to Torrey, the secondary reference. You're arguing this almost as though the district court was required to review the PTO's determination on re-exam and you feel that he did an inadequate job in doing so, but this isn't an appeal to us from a district court review of a re-exam. This is an appeal to us from a district court decision, isn't it? Isn't it after a bench trial? Yes. And so didn't he have an opportunity to assess the credibility, for example, of Dr. Matthews? I mean that was, to me, what seemed to be a critical distinction between what occurred in re-exam, which occurs only on paper, with no opportunity for cross-examination, and in fact no even physical presence of Dr. Matthews. It's all done by documentation. And so for the PTO to say on its face, Dr. Matthews' assertions look reasonable, and then to accept them, I mean, can't you see how it's certainly feasible that a district court making a credibility determination, and if Mr. Matthews doesn't hold up under cross-examination, you could result in a different record. And that seems to be a little bit of what he said here. He may have also done all that other stuff you're saying, but if it's reasonable for him to have made the fact findings he made about the credibility and or testimony of Dr. Matthews, doesn't that justify obviousness in his decision? Your Honor, I understand, and I'll turn to Dr. Matthews in 30 seconds, because obviously that's a critical part, but just to put a period at the end of the sentence and to answer your first question. The district court at pages 50 to 53 roughly of its opinion goes, time and time again says, the standard is overcommit because, and it lists reasons, and one of the reasons it expressly gave is because the PTO didn't cite KSR, not that it didn't follow it, not that it found error, but because the letters KSR doesn't appear. Similarly, the district court said it didn't consider Torrey when Torrey was A, on the face of the patent, and B, expressly in re-examination. Mr. Wolf, I believe Mr. Matthews said he looked at Sato with blinders on. He did. Expressly. So if we're going to criticize the PTO, let's get to Mr. Matthews. Absolutely. So, and I agree with you. I think that the pivot point for obviousness is this evaluation of Dr. Matthews. The threshold problem with the court's analysis of Dr. Matthews' credibility is that the district court didn't understand what Dr. Matthews was doing in the PTO. Dr. Matthews said in the PTO, look, I get how, to one in skill and the art generally, you might consider moving the engine into the boat. So when you say he didn't understand, he didn't agree with you? No, he didn't understand, Your Honor. Respectfully. What you're just going to tell me now, did you tell him, the district court judge? Your Honor, we said that the trial counsel said that Sato teaches away, teaches away from using a horizontal engine shaft. What the district court said, and the district court never confronted that. The fundamental question before the district court, I believe was, does Sato teach away? Actually, it didn't. It said, it cited it, it cited what my client said below. It teaches away. But then in the very next sentence, he seems to imply that KSR did away with the teach away doctrine. He doesn't actually say, I don't find. Does a horizontal shaft engine allow only one design solution? No, absolutely not. There are any number of design solutions one can have with a horizontal shaft engine. So the district court, and I believe... Doesn't your teaching away argument rest on that assumption? No, Your Honor, because at column one, line 41, Sato says, however, with this type of device, the horizontal axis is disposed, and then goes on to list four problems with the horizontal engine axis. Now, what's interesting is, the fight below was whether Sato was right or wrong. And at the end of the day, everybody came to believe that Sato's criticisms in column one were wrong as a matter of engineering, that he was incorrect. But whether he was, as a matter of mechanical engineering, correct or not, is not the teaching away analysis that should have been done. The analysis should have been, does Sato say... If one of ordinary skill in the art would understand that the language that you're talking about is incorrect, why would you pay attention to it? Well, Your Honor, first of all, that analysis was never done by the district court. Was it whether... I'm not aware of a case there may be one... I'm not... You're talking in theory about what teaching away is all about. Right. That's my question. I'm not aware of a case that says that in a clear situation of teaching away, if everybody knows that the science behind the teaching away is wrong, we can disregard it. There may be such a case. I'm not aware of it. Shouldn't there be? Well, no, Your Honor, because it's still the question is why would you combine these references. You have a reference out there in the art and everybody agrees it's wrong. But it doesn't teach away then, does it? If I say, I have a sports car, don't use red because red will get the cops on your tail. And it turns out that the statistics are that the police will pull you out... Right. And everybody in skilled in the art knows that that's not true. How does it teach away? Because as far as I know, when you look at... Bad teacher, right? Right. We have a new set of law that says bad teachers can teach away. Well, that would be the new law that this court would need to create. You wouldn't want that law, would you? Well, that would have to be, I would not, but that would have to be sent back for review. But the fundamental point... That's what you're asking for. No, what I'm asking for is a recognition that the district court did not actually do the teach-away analysis. In one sentence it said, plaintiff says that the patent is teach-away. Assume he didn't do it, it's harmless error if it doesn't work, right? If the teach-away argument doesn't work as a matter of law, which is I think what Judge Wallach was suggesting, then the fact that the district court hadn't done it is what we usually call harmless error. For two reasons it's not harmless error, even if that were the law. The first is that the credibility determination the district court made as to Dr. Matthews was not that he said yes when he said the sun was red when it was actually yellow. It was the difference in testimony between what he said at the PTO and at deposition. The thing about the PTO, though... I didn't think that the district court's problem with the doctor was solely on the basis of teach-away. I thought it also had to do with the fact that he had failed to tell the PTO what he told the court. But in paragraphs 11 and 12 of his declaration, he says expressly, one of skill in the art might see X in a vacuum, but when one looks at SATO, one teaches away. And the district court never grappled with that. The district court in essence said, Dr. Matthews, I don't trust you. You're not credible. When really what he was saying is… So he didn't just – well, he did say you're not credible. I agree with that. But he also said he admitted at trial SATO suffered from weight and balance issues. I mean Mr. Matthews provided a lot more testimony, not all of it supportive of your cause in the district court. It was not before the PTO. And in all of those things, the district court cites and talks about why, therefore, he doesn't find Mr. Matthews' expert testimony to be persuasive. Respectfully, Your Honor, I believe that if you factor in the prism, the different prism that Dr. Matthews used at the PTO, applying the teach-away doctrine to the more generic questions asked at trial, if you take that issue away, then there's nothing – there's no contradiction. There's nothing to – the basis of the credibility determination evaporates at that point. Credibility determination, if it's based on I just don't trust you, you obviously are in no position to review that. But the court expressly said what the basis of its credibility determination was, and the basis of the court's credibility determination was the court's misunderstanding of the law. It was the court's failure to analyze the teach-away doctrine. It also was what the presiding judge was talking to. The doctor had also said something to the effect of, oh, well, you could put a horizontal engine in there. It wouldn't be a problem with regard to SATO. But SATO says don't do that, and so we get back to Judge Wallach's question. My point is if we are going to disagree with you on the teach-away argument, then why isn't the district court correct? So then we get to the second basis. If you say that's not sufficient to say at least to the district court – Well, I mean, imagine what would happen if the declaration from the good doctor had been put into the PTO and had his teach-away argument, but also said, oh, well, if you want to modify SATO by putting a horizontal engine and go ahead, anybody in the court could do that. Imagine what that declaration would have done to your case at the PTO. I thought that was really what the district court was saying. But, Your Honor, I believe that the PTO understood far better than the district court did the importance of the teach-away argument. Dr. Matthews didn't hide his cards in the declaration. I mean, essentially the district court disregarded the first two sentences of paragraph 11 of the declaration where he says, I get that one of you in the back might think to do this, but let's look at what SATO says. Now, the district court may disagree with that, although he didn't say that. He doesn't put that analysis in there. But to say that somehow Dr. Matthews was dishonest or not credible because he was following the teach-away doctrine, we think if the reason the judge didn't believe Dr. Matthews is because the judge did not understand the relevant law that Dr. Matthews was applying, I do not believe that it was appropriate to make a credibility determination based on that and should be sent back and said, here's the law you're on, district court, now make a credibility determination. But let's go to perhaps the most important factor here, which is secondary considerations of non-obviousness. To be clear, you're into your rebuttal time. Use it at your peril. I will do it very quickly. Your Honor, this is the most important thing. The district court did not apply the Demico line of cases. Here, it was undisputed that the patented invention and the commercial product were coextensive. Under Demico, that raises a presumption, a presumption of a nexus. The district court found that, quote, it was unclear which characteristics led to commercial success, and that commercial success, therefore, is not pertinent. That turns the Demico presumption on its head. Once that nexus was established by presumption, it was up to the defendant, not the plaintiff, to show what was the cause. And by doing that, that alone dictates that reversal must occur. Very briefly on indefiniteness, Your Honor, the court did not point out what claim or term or limitation was indefinite. Without that, there can be no indefiniteness finding. And finally, on the written description issue. You said it was a propeller shaft extending at least 12 to 18 inches. That's on the court found on the invalidating, the basis the court found invalidating on the written description was there was no maximum length prescribed. It wasn't a minimum length issue. That's an argument that defendants made. But the court found it was a maximum length issue. No, that's because extending at least 12 to 18 inches can also extend to 192 inches. Sure, absolutely. But the patent also doesn't talk about what material the engine was made of or what color it was or what its country of origin was. Would a shaft 192 inches long infringe? As a technical matter, yes. Yes. It wouldn't work, but if you could somehow make it work, it would infringe. And then finally, on the engine mounting plate issue, the court again misconstrued it, misconstrued the relevant standard. Simply put, Dr. Matthews said the engine mounting plate was expressly in Figure 4. The experts for defendants said we can't really tell. The district court said it was insolubly ambiguous. Well, if something is insolubly ambiguous, that doesn't satisfy a clear and convincing standard. Again, this entire case falls and has to be remanded on the basis of misapplied presumptions. Thank you. Who's first, Mr. Strait or Mr. Cuffley? Mr. Strait. Mr. Murrell and I will divide the allocated time. I'll focus on obviousness and Mr. Murrell will focus on indefiniteness and lack of written description. May it please the court. The district court properly determined that the gator tail combination patents are invalid as obvious. It applied the correct legal standard throughout, recognized the presumption of validity, and made its findings explicit and supported by clear and convincing evidence. Mudbody respectfully requests that this court affirm the judgment of the district court. I want to focus on several issues that were only really raised in the reply brief and in the argument here today. First, the district court applied the exact proper standard and the degree of deference necessary. Second, the Sado patent does not teach away. Third, there was an obvious motivation to combine a horizontal shaft engine with the short tail design that that issued. And finally, the court properly evaluated the secondary considerations. The clear and convincing standard does not change. It's the same standard, and it is through that standard that the court recognizes the presumption of validity. That's the way the deference is paid to those prior decisions of the patent office. But as the Supreme Court in Microsoft said, if the patent office doesn't have all of the material facts, it's considered judgment loses force. Here, the patent office did not have all the material facts, including Tory, Scavenger, Honda. It also didn't have the inventor's pre-patent filing, pre-litigation admission in a senior project that the only major design specification is to incorporate a horizontal drive unit onto the existing go-devil hull. What precisely was the prior art upon which the district court based its decision of obviousness? So the district court listed all of the prior art that was not objected to in terms of being prior art. It then went on to identify specific pieces of prior art that it felt were the most pertinent to the obviousness determination. See, that's not helpful. District courts don't just articulate 20 pieces of prior art and say, well, they're all obvious. Figure out how to put them together. I really got a sense that this opinion was only about Sato and maybe Tory, but I wasn't even sure if it was Sato plus Tory or Sato and Tory. I mean, tell me, what was the precise nature of the district court's conclusion? What patent precisely rendered this claim obvious? And I think the court specifically focused on Sato. That was what he walked through in detail, carefully focused on Sato. And contrary to the arguments that have been made here, Sato doesn't— all that other prior art about Mr. Inventor's so-and-so statement and his PhD or whatever else it was. None of those, it seems to me, formed any basis that I can see in this opinion for the district court's conclusion of obviousness. For example—sorry. For example, the district court would use other pieces of art to show, for example, a timing belt was known in the prior art or other pieces of art. But there's no question, Your Honor, the focus of the opinion was Sato and Tory. Well, there's no real challenge as to what that other prior art teaches. That's right. That's right, Your Honor. Like the presiding judge is saying, and I agree with this, I think you're starting off by saying, oh, well, the world of difference here. The district court considered whole lots of things that the patent office did. Therefore, the district court judge was okay to be critical of the patent office. That's not going to wash. I mean, the problem here is to show that Sato doesn't teach away. And I don't think the court was critical of the patent office. What he was critical of was Dr. Matthews not providing complete information to the patent office. And then at trial, the credibility issue was that Dr. Matthews— The whole problem is if Sato teaches away from strapping a horizontal engine into Sato's invention, then your case is over because Sato is going to disappear. I don't think that that's— Are you going to make an—I mean, your adversary has made, I think, a very fine argument as to why Sato should be taken off the table. And you're rebutting that, I believe, as the time ticks off. Yes, and, Your Honor, I don't think Sato is the only way to get to the obviousness determination. The court also used— I mean, you better take some time to take it off the table. Okay, well, so Sato itself, first of all, whether a reference teaches away is a fact question. And the court expressly considered Gator Tales teaching away— They're saying it was clearly erroneous, so move on. Okay, and what the Gator Tales is asking the court to do is to disregard those fact findings. What was critical at the trial court level— So why did the district court say Sato didn't teach away? The court expressly, page 40 of the opinion, considered the argument that it taught away and rejected the argument. He did consider it, and I think what— How do we know how he rejected it? If he said, oh, I consider it, but I reject it. I think that's part of what your adversary's argument is. You know, this is not kangaroo court. You're supposed to say why things are— But part of what we see here on appeal are arguments that Sato expressly teaches away when it does not. The claims of— Why don't you tell us? I mean— The claims of— They're all here. Tell me why Sato doesn't teach away. First of all, Gator Tales selectively cites portions of the background of the invention that criticize vertical shaft engines— Excuse me, horizontal shaft engines. However, Sato also critiqued vertical shaft engines, and that's at column 1, lines 24 to 26. Sato's goal— Well, that would then be teaching away from his own patent. No, his goal was to address the issues with both. And when you get to the claims of Sato, nothing in those claims say you must use a vertical shaft engine. And the testimony at trial from the experts was a support bracket in the claims could be for either vertical or horizontal engines. That's the only thing Gator Tales cites in the claims themselves is this support bracket for the engine. Dr. Gares testified, and this is at page 22 of Godevil's Brief, the advantage to a horizontal drive engine is that you mount the motor to any point that the designer finds convenient. But then importantly, what Sato does and what Dr. Matthews provided at trial was the motivation to combine Sato and a horizontal shaft engine. And therefore, Dr. Matthews, Gator Tales' own expert, provided both the testimony that Sato does not teach away and provides the motivation to combine. So you're saying that Dr. Matthews' testimony is inconsistent with the teach away theory. Exactly. That's exactly what we're saying. And what happened was he tried to return to his discredited declaration that he gave to the PTO at trial. But on cross-examination, when confronted with his deposition testimony, he had to claim that he was obviously wrong in his deposition. And what he said was, I think that a mechanical engineer would look at Sato and say, we've got way too much structure hanging out behind the boat. And so this vertical crankshaft design in Sato is just not going to work in a mud boat application. We need a horizontal crankshaft engine. That's at page 2172 of the appendix. Critical testimony because it provides not only does Sato not teach away, it gives us a motivation to combine a horizontal shaft engine with the short-tail design of Sato. The key to Sato is the short-tail design. So let me see if I understand. Are you – if we disagree with you that Sato teaches away and that we find there's a clear error in the district court's fact-finding about I don't buy the teaching away, do you lose? I don't think so, Your Honor, because as pointed out, we also have Torrey that the court separately reviewed, started with Torrey, said looking at Torrey, belt-driven mud motor, and the only elements that we're missing from it that are found in the prior art are an elongated drive shaft. But let me ask you a question, which I'm going to define for you as I think helpful to you. I just want to start that out so you don't kind of reject it out of hand. But I don't know. So I understood Sato, to the extent it taught away, as teaching away because you don't want this long thing. I mean, my technology understanding here is quite minimal. But you want this long thing getting in the muck and the mud and bouncing off whatever, I don't know, land because it was really long. I'm admitting my technology's awful. But so Sato, I thought, went to the vertical engine – or vertical drive shaft to avoid having this long thing that is hitting up against stuff. So couldn't it be fair to say that Dr. Matthews and others said that while Sato taught away from the long thing, and that was – he may have defined that in terms of horizontal versus vertical, when a skill in the art understood that there were ways to use a horizontal that didn't involve that long thing that banged up against everything. And thank you. Thank you for the most mutilated version of technology I think I've ever given. The way Dr. Garris explained that at trial that I think was the most helpful, Sato tried to solve both problems, a vertical shaft engine that was too close to the boat and a long tail engine that was too far away. Did Sato discuss weight and the problem with having all that weight off the back end? He didn't, and I think that's one of the issues that is at issue with his patent is when anybody looks at it, including Dr. Matthews, they say that's an obvious problem, and an obvious way to address that problem would be to use the horizontal shaft engine and help you move some of that weight off of the back of the boat. But once again, in the claims themselves, there's nothing in those claims that says you must use a vertical shaft engine. It's absent from the claims. All the claims talk about is a support structure, and that can be used for either vertical or horizontal. The key to Sato was this short tail design that solved the problems of both too close to the boat and too far away from the boat. I think it's also important that the district court found the clear motivations to combine these references. The horizontal drive helped Sato balance problems. It was an obvious motivation, and then he walked through the obvious choices to help Torrey to get to the result that the gator tail patents refer to. Also, there's a suggestion in the reply brief that MudBuddy and its experts have conceded teaching away, and that's just simply not accurate. If you look at Dr. Todd's testimony, page 6801 of the appendix, he intuitively followed the KSR test, and when asked about teaching away, he said— Okay, you are 36 minutes into his time. Second. Second. Thank you. You might feel like 36 minutes to some of us into his time. Are you going to stop now and let him have his time? Yes, I am. Thank you. You get your full time since he stopped so politely and sat down right away. May it please the court, my name is John Murrell. I represent GoDevil. I'd like to briefly address the issues with regard to lack of written description. That's their names for these companies. We've got MudBuddy, GoDevil, and Gator Tail. Well, hey, you've got a wolf representing a gator. I don't know what to do about that. It has caused me quite a bit of confusion myself over the last few years. But specifically with regard to lack of written description, lack of enablement, the engine mounting plate. That is a term that was—there's no dispute. It was added by amendment to the claims long after the original application was filed. Engine mounting plate does not appear anywhere in the specification. In fact, when the application was filed, something entirely contrary was suggested in the specification. It says that the horizontal shaft engine is vertically mounted, suggesting that the vertical face of the horizontal shaft engine was bolted directly to the back of the drive housing. The argument that an engine mounting plate was inherently contained in the specification, when the specification says something completely different, simply does not stand to reason. It's also a factual determination that was made by the trial court. He concluded that he looked at the vertical mounting language. He looked at the arguments on engine mounting plate. He looked at this fight over the diagrams. And after weighing all of that evidence, he concluded as a factual matter that engine mounting plate was not enabled or described in the application. For that reason, and I should also add, that's only subject to review for clear error. And Gatortail comes into this courtroom and simply wants to retry that issue, re-urge all of these same arguments about the meaning of these diagrams using the testimony of their trial witness, Dr. Matthews, who's already been discredited as a witness, whose credibility has been called into question as a witness by the district court with regard to indefiniteness. Now, I did not hear this in the presentation on oral argument, but I do, it was raised in Gatortail's brief. There was a suggestion that the appellees did not have the procedural, it was procedurally improper for the defendants, the appellees, to raise the issue of lack of written description, lack of enablement with regard to the segmented propeller shaft. I do want to respond to that briefly and I would respectfully refer the court to the United States Supreme Court decisions in Union Pacific 558, United States 67, also the Bloom decision 457, U.S. 132. Those cases both clearly make the point that we do not have to file our own cross appeal to raise issues in support of the trial court judgment. So I just want to address that. I wanted to address that. I did not want to leave it unresponded to. With regard to indefiniteness, Gatortail argues that, well, the specifications teach away from long tails. That's what they said in their brief. Now, if I understood correctly in oral argument, I believe in response to Judge Clevenger's questions, I believe it was stated that a propeller shaft of 192 inches would infringe the patents. So I'm not sure where that leaves us. It almost sounds to me as though there's a confession here that they are indefinite. That's been our argument all along, that the scope of the claims in light of the specification places no limit on shaft length, does not define any minimum or maximum length of a drive housing, and the variability in those two – it allows for an infinite number of configurations. There's no definiteness to these patents at all. Why? Why does – I don't understand that argument. So it says at least 12 inches. So what? Why does that make it indefinite? It says 12 or more. So what if it's 192 inches? So what? Because it's the combination, Your Honor, of – We claim it's a short tail patent. Your argument is this patent is designed for short tails, not long tails. 192 inches is not a short tail. And they argued in connection with claim construction. The patent is strictly restricted to a short tail. They sought this expansive construction at the Markman hearing, and they got it. They won that. But now when we reach the invalidity stage, they want to pull back from that and say, wait a minute, our patents don't extend to all of these other designs. No, that's a different question than indefiniteness. I'm not buying your indefiniteness argument. And you're morphing it now into something else, and I'm not buying it. But why – I don't understand why a claim that says at least 12 inches, at least 18 inches is indefinite. I don't understand. And let me be clear, Your Honor. It's not merely the length of the propeller shaft. It is a combination of things. It is the length of the propeller shaft. It is also the – No, no, no. Indefiniteness. What is indefinite about this claim? Tell me the precise claim language that is indefinite and not subject to reasonable certainty. The lack of any specificity, minimum or maximum length of the drive housing coupled with the length of the propeller shaft. Why? So you can use any length. So what? That means it's not limited. But as we illustrated in our brief, that would extend to the traditional long tail. Okay. So then maybe it's obvious. But why does that make it indefinite? Because it does not reasonably convey the scope of the invention as required by Nautilus. It does. The scope of the invention is any length is good. That's what he asked for. That's what he applied for. That's what he got. But it's not just the length. It allows you to move the drive housing up the transom, just like Godevil did when it thought it was designing a way from these – No, he don't. So again, go after him for novelty and obviousness. I don't see how that has anything to do with indefiniteness. Well, I recognize you disagree with me, Your Honor. I would say that – I would also add they can't have it both ways. If the court agrees with gator tail that these claims provide the certainty necessary to pass the Nautilus test, then there's a complete lack of enablement or written description of these same designs. There is nothing in the specification that enables – Enablement is not on appeal to us. I didn't miss something, did I? I think only written description, right? Written description and indefinite – Okay, I'll limit it to written description. It's a factual finding and the judge – the written description argument, if you decide the indefiniteness argument in their favor, then there's nothing that describes – He didn't make a written description argument on the length. The length issue is an indefiniteness argument, Nautilus argument. Well, what we made was a written description argument with respect to the segmented propeller shaft and U-joint connection that allows all of these different configurations, which Judge Moore referred to. If you find that those are – am I – I'm sorry. Am I misreading this? Am I out of time? Yeah, you're out of time. But that's okay. We'll give Mr. Wolfe a little bit of rebuttal time, which I bet he'll appreciate. So you keep – the longer you go, the more time he gets. Well, in that case, I'll have a seat. Thank you very much. So at two minutes, he was over by about two. So here's your rebuttal time. Thank you. I want to leave the court with three important thoughts, hopefully very brief thoughts. The first, at page 40 of the district court's opinion, which is the Appendix 40, the district court writes, Gatortail, of course, vigorously refutes this conclusion, emphasizing repeatedly that Saito rejected and taught away from using a horizontal shaft engine. That's our argument. In short, the court is not persuaded by Gatortail's arguments because they rely on the same rigid application of the teaching, suggestion, or motivation that test rejected by the Supreme Court. That is the sum total of the district court's analysis of the teach-away argument. Counsel said that teaching away is a factual determination entitled to clearly erroneous review. That's absolutely true, but what I just read to you didn't contain a single factual finding. In fact, I would say it's based on a legal premise that KSO overruled teach-away doctrine that is simply untrue. Secondly, on the notion of secondary considerations, you heard nothing from counsel, just like you heard nothing from the district court about the presumption that DEMICO and all of its progenies say is entitled to a patent like this one, where it is undisputed there is co-extensivity, if that were a word, between the claim and the commercial product. It was defendants' burden to overcome that presumption. When the district court threw up its hands and said, I don't know, that should have entitled us, the presumption should have entitled us to the benefits of the commercial success and other secondary considerations. Instead, the district court said it is therefore not pertinent. That is 180 degrees off what the law is under DEMICO and elsewhere. Finally, I want to talk about the metal plate issue, the mounting plate issue. Both the district court and defendants misconstrued the lead argument made by Gator Tail in this case. And that lead argument is that Figure 4 combined with the language expressly, not inherently, expressly disclosed that engine mounting plate. And what did the court say? The only response the court made was in footnote 41, where it said the situation is ambiguous. It can't tell whether it is expressly disclosed or not. It is axiomatic, your honors, that if something is ambiguous, it is not clear and convincing. They spent most of the time in the brief, and the district court spent all of its time, except in that footnote, talking about inherency. The dueling experts on that issue disagreed. The dueling experts disagreed as to whether or not the patent itself taught the existence of the plate. They were 90 degrees opposed, not 180 degrees opposed. Dr. Matthews said it is there. Why can't, aren't we forced to presume that the district court chose one expert over the other? But Dr. Garris and Dr. Cuny said it could be there, we can't tell. But the district court did adopt what defendants experts said, and that was it is ambiguous. Well, ambiguous isn't clear and convincing. All right, Mr. Wolfe, I think we have to wrap up. Thank you very much for your time, your honors. Thank both counsel for their argument. The case is taken under submission.